UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JUUL LABS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-cv-01063 (LO/IDD) |
| | ) |
| THE UNINCORPORATED ASS'N | ) |
| INDENTIFIED IN SCHEDULE A, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendants jorwhe-18, achieve-30/perfect-2018, linc2park, bangming_vip, jhb_bin885, and caixue_jinling (collectively, "Defendants"), outlined in Schedule A, pursuant to Federal Rule of Civil Procedure 55(b)(2). Plf. Mot. for Default J., ECF No. 54 [hereinafter "Default J.]. After Defendants failed to appear at the hearing on January 4, 2019, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, and the supporting memorandum, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be **GRANTED**.

## I.  INTRODUCTION

Plaintiff filed its Complaint on August 24, 2018, against unincorporated associations that are identified in Schedule A. Compl., ECF No. 1; Schedule A to Compl., ECF No. 8. Plaintiff alleges that Defendants trade upon its "world-renowned" reputation to sell, without age restriction,

nicotine extract pods ("Pods") displaying counterfeit versions of its federally registered trademark. Compl. ¶ 1. Plaintiff seeks relief pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1125(a), 1125(c). Compl. ¶¶ 38, 44, 54. Specifically, Plaintiff requests that the Court permanently enjoin Defendants from infringing or otherwise violating Plaintiff's registered trademark, order that those in privity with Defendants cease and desist from providing services and displaying advertisement to Defendants, award all profits realized by Defendants because of their unlawful acts or award statutory damages in the amount of $2,000,000, and award reasonable attorney's fees and costs. Compl. ¶¶ A-E.

### A.    Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves federal questions arising under the Lanham Act, which is federal law relating to trademarks. Compl. ¶ 8.

This Court also has personal jurisdiction over Defendants because Defendants established minimum contacts with the Commonwealth of Virginia. A federal court may exercise personal jurisdiction over a non-resident in the manner provided by the law of the state in which the court sits. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Because Virginia's long-arm statute is interpreted to extend personal jurisdiction to the fullest extent permitted by due process, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citations omitted). To satisfy the requirements of due process, a defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

2

Here, Defendants directed electronic activity into Virginia with the manifested intent of engaging in business activity, which created the basis for this action. Compl. ¶ 10; *see ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). Namely, Defendants sought to do business with this District's residents by operating one or more commercial internet stores through which Virginia residents are misled to purchase counterfeit products using Plaintiff's trademarks. Compl. ¶ 10.   Each of the Defendants targeted sales from Virginia residents by operating online stores that offer shipping to Virginia. *Id.* Defendants ship their counterfeit Pods to this District. *Id.* Therefore, the Court may exercise personal jurisdiction over the nonresident Defendants based on Defendants' internet contacts with this forum.

Similarly, venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendants' online sales were directed, in part, at residents of this District, and Defendants in fact shipped their counterfeit products into this District. *Id.*

### B.     Service of Process

Federal Rule of Civil Procedure 4(f) authorizes the Court to order service on an individual in a foreign country by means that are not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). However, the court-ordered method of service must be "'reasonably calculated' to give notice to defendant." *BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005). Service of process through email generally satisfies constitutional due process. *See WhosHere, Inc. v. Orun*, No. 1:13-cv-00523-AJT-TRJ, 2014 WL 670817, at *3 (Feb. 20, 2014).

Defendants are individuals and foreign businesses located in China and elsewhere outside the United States. Compl. ¶ 18. On August 27, 2018, Plaintiff filed a Motion for Order Authorizing Service of Process by Email. Plf. Mot. for Order Authorizing of Serv. of Process by Email, ECF No. 14. On August 29, 2018, the Court granted Plaintiff's Motion. Order, ECF No. 22. On

September 10, 2018, Plaintiff served the Defendants using the email addresses that Defendants supplied to PayPal, Inc., ("PayPal")to register for their accounts. Notice of Serv., ECF No. 36. Accordingly, the undersigned finds that service of process has been accomplished in this action.

## C.    Grounds for Default

Plaintiff filed its Complaint on August 24, 2018. Compl., ECF No. 1. Defendants failed to appear, answer, or file any responsive pleading in this matter. On December 19, 2018, Plaintiff filed with the Clerk's Office a request for Entry of Default. ECF No. 49. The Clerk entered default against Defendants on December 20, 2018. ECF No. 51. On December 21, 2018, Plaintiff filed a Motion for Default Judgment and Memorandum in Support, for which the Court held a hearing on January 4, 2019. ECF Nos. 54, 55, 58. When Defendants failed to appear at the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II.  FACTUAL FINDINGS

Plaintiff is a Delaware corporation with its principal place of business in San Francisco, California. Compl. ¶ 11. It sells JUUL, an electronic nicotine vaporizer system that is comprised of a main device that houses the electronics of the system and Pods containing e-liquid that is vaporized when the user inhales a puff. Compl. ¶¶ 12-13. Plaintiff owns the trademarks for JUUL and has valid and subsisting U.S. Certificate of Trademark registration numbers. Compl. ¶¶ 15-16. Plaintiff's trademarks are inherently distinctive and have acquired considerable brand loyalty through its sales. Compl. ¶ 17. Reputation and consumer goodwill associated with Plaintiff's trademarks are of incalculable and inestimable value to Plaintiff. *Id.*

Defendants sell counterfeit Pods, which are low quality, to Plaintiff's consumers within the United States, including Virginia. Compl. ¶¶ 18, 25. Defendants promote, market, import,

4

distribute, offer for sale, and sell products in the online marketplace using counterfeit versions of Plaintiff's trademarks. Compl. ¶ 19. To accomplish this, they use similar or the same pictures and descriptions of the Pods in their online marketplaces. Compl. ¶ 19. Defendants price the counterfeit goods at substantially lower prices than the genuine JUUL products. Compl. ¶ 21. The counterfeit Pods are packaged using virtually identical packaging as genuine JUUL products and offer customer service and use an indicia of authenticity and security that consumers associate with Plaintiff's authorized retailers. Compl. ¶ 26.  Defendants also deceive consumers by using Plaintiff's trademarks within the content, text, and/or meta tags of their website in order to attract various search engines looking for relevant consumer searches for JUUL products. Compl. ¶ 27.

Plaintiff has not authorized or licensed Defendants to use any of Plaintiff's trademarks. Compl. ¶ 26. By using Plaintiff's trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit Pods, Defendants are likely to cause and have caused confusion, mistake, and deception among consumers, thereby harming Plaintiff. Compl. ¶ 33.

### III.   EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206

(5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

## A. Count I – Trademark Infringement & Counterfeiting

Plaintiff alleges a claim of trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1). Compl. ¶ 38. The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or deceit. 15 U.S.C. § 1114(1). Additionally, the Lanham Act prohibits the use of a counterfeit registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or deceive. 15 U.S.C. § 1114(1). A counterfeit mark is defined as "a spurious mark [that] is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

To establish a trademark infringement claim, a plaintiff must demonstrate that (1) it owns a valid trademark; (2) the trademark is protectable; and (3) the defendant's use of a colorable

imitation of the trademark is likely to cause confusion among consumers. *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). The Fourth Circuit has posited nine non-exhaustive factors to determine the likelihood of confusion. *See generally George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Notably, the plaintiff enjoys a presumption of a likelihood of confusion when the infringing mark is nearly an exact imitation in an attempt to capitalize on the popularity of plaintiff's trademark. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

Similarly, a trademark counterfeiting claim requires a plaintiff to establish that "(1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse consumers." *Assoc. Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512, at *3 (E.D. Va. Mar. 19, 2013).

Here, Plaintiffs sufficiently pleaded their first count. The first and second elements of the trademark infringement claim are satisfied because Plaintiff owns valid, subsiding, and protected trademarks as the marks were registered with the United States Patent and Trademark Office. The third element is satisfied because Defendants use replicas of Plaintiff's trademarks to sell the counterfeit Pods. The counterfeit Pods are packaged using virtually identical packaging as genuine JUUL products and offer customer service, which consumers associate with Plaintiff's authorized retailers. This imitation of Plaintiff's trademark is likely to cause confusion among consumers. Therefore, the Court finds that Plaintiff has sufficiently pleaded trademark infringement.

Plaintiff has also sufficiently pleaded its trademark counterfeit claim. Defendants intentionally used a counterfeit mark in commerce and knew that the mark was counterfeit because

they package the counterfeit Pods using virtually identical packaging as genuine JUUL products. They perpetuated the illusion of legitimacy by offering customer service that consumers associate with Plaintiff's authorized retailers. Defendants also use Plaintiff's trademark within the content, text, and/or meta tags of their website. Further, the use of Plaintiff's trademark occurred in connection with the sale, offering for sale, and distribution of goods, because Defendants sell the counterfeit Pods in online marketplaces and ship the counterfeit products to consumers upon payment. Finally, as stated previously, the use of Plaintiff's mark is likely to confuse consumers because Defendants create replicas of Plaintiff's distinctive mark to sell counterfeit JUUL products. Thus, the Court finds that Plaintiff has met all the elements for its trademark counterfeit claim.

### B. Count II – False Designation of Origin

Plaintiff alleges that Defendants misrepresented the origin of the counterfeit products in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Compl. ¶ 44. A party is liable for false designation of origin if the use of the mark is "likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). As discussed above, Defendants' use of Plaintiff's mark is likely to cause confusion because of the similarity between the counterfeit products and Plaintiff's trademark. Consumers are likely to believe that Defendants' counterfeit products are sponsored or approved by Plaintiff. Therefore, the undersigned finds that Plaintiff alleged well-pleaded facts to support their second count.

### C. Count III – Trademark Dilution

Finally, Plaintiff alleges that Defendants' use of Plaintiff's trademarks dilutes and tarnishes Plaintiff's mark in violation of 15 U.S.C. § 1125(c). Compl. ¶ 50. To establish a claim for trademark dilution, Plaintiff must show that the similarity between Plaintiff's trademark and Defendants' marks "harms the reputation" of Plaintiff's marks. 15 U.S.C. § 1125(c)(2)(C). As explained above, Defendants use identical replicas of Plaintiff's marks to sell counterfeit products. However, Defendants' counterfeit products are lower quality than Plaintiff's genuine products. Thus, Defendants caused, and continue to cause, irreparable injury to and actual dilution of the distinctive quality of Plaintiff's trademark. Accordingly, the undersigned finds that Plaintiff states a claim for trademark dilution.

### IV.  REQUESTED RELIEF[1]

Plaintiff seeks a permanent injunction against Defendants and third-parties acting in concert with Defendants; an entry of an Order that those in privity with Defendants and those with notice of the injunction, including online marketplaces, internet search engines, or payment processing service providers, cease providing services and advertisements to Defendants regarding the sale of goods with Plaintiff's trademark; and all profits realized by Defendants by a sum not exceeding three times the amount outlined in 15 U.S.C. § 1117, or, in the alternative, statutory damages in the amount of $2,000,000.00 per use of Plaintiff's trademark. Compl. ¶ A-D. Plaintiffs also request the transfer of all remaining assets in the Defendants' PayPal accounts. Mem. in Support of Default J., ECF No. 55. In their Memorandum in Support of Plaintiff's Motion for Entry of Default Judgment, Plaintiff appears to elect statutory damages in lieu of seeking Defendants' profits realized from using the counterfeit marks. *Id.*; *see also* 15 U.S.C. § 1117(c)

---

[1] Plaintiff waived its request for pre-judgment and post-judgment interest and attorney's fees in a supplemental filing. *See* ECF No. 60.

("[P]laintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages").

## A. Permanent Injunctive Relief

Plaintiff requests entry of a permanent injunction enjoining Defendants and third parties acting in concert with Defendants from infringing Plaintiff's trademarks, including all injunctive relief previously awarded by the Court in the temporary restraining order and preliminary injunction.[2] ECF Nos. 45-46.

The Lanham Act provides that a court may grant an injunction to prevent trademark infringement. 15 U.S.C. § 1116(a). To obtain a permanent injunction, a plaintiff must show

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, Plaintiff satisfies all four elements. First, Plaintiff continues to suffer an irreparable injury as Defendants are continuing to infringe on Plaintiff's trademark causing a likelihood of confusion among consumers. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 42 F.3d 922, 938 (4th Cir. 1995) ("[F]inding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears."). Second, statutory damages are inadequate to compensate Plaintiff because Defendants concealed and continue to conceal their true identities, and their lack of response to the Complaint and Motion for Default Judgment demonstrates a threat

---

[2] In the September 18, 2018 Order, this Court directed PayPal to immediately freeze all PayPal accounts associated with Defendants. *See* ECF No. 46.

of continued infringement and counterfeiting. Thus, it is necessary to enjoin third-parties who have engaged with Defendants from facilitating access to accounts and services that Defendants have unlawfully used to infringe upon and counterfeit the Plaintiff's trademarks. Third, the only hardship that would befall Defendants by granting Plaintiff's requested permanent injunction would be the requirement to follow clearly established trademark law. Therefore, the balance of hardships weighs in Plaintiff's favor. Finally, public interest favors an injunction because it would prevent the public from being confused by Defendants' inferior counterfeit marks and products. Accordingly, Plaintiff's requested permanent injunctive relief should be granted. Also, PayPal should be ordered to freeze all accounts associated with Defendants and restrain and enjoin from transfer any monies held in such accounts unless transfer to Plaintiff is necessary to satisfy the judgment in this matter.

### B.  Statutory Damages

In a case involving a defendant's use of counterfeit mark, the trademark owner may elect to recover an award of statutory damages. *See* 15 U.S.C. § 1117(c). When the defendant's use of the counterfeit mark is willful, statutory damages may be awarded up to, but may not exceed, the amount of $2,000,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(2). To determine the appropriate amount of statutory damages, the Court "must take into account the need to deter others engaged in selling counterfeit goods, particularly those whose marketplace is the internet." This Court has awarded maximum statutory damages for use of counterfeit marks when a defendant's use was "sufficiently broad, extensive, blatant, and willful." *Playboy Enters., Inc. v. Asiafocus Int'l, Inc.*, No. Civ. A. 97-734-A, 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998).

11

Here, Plaintiffs are entitled to statutory damages because Defendants willfully used counterfeit JUUL marks. First, Defendants used marks that were essentially indistinguishable from Plaintiffs' own trademarks. Second, Defendants willfully used counterfeit marks as their actions were done in bad faith to gain profit at the expense of Plaintiff's reputation. This determination of willfulness is further supported by the fact that Defendants replicated and displayed counterfeit JUUL marks to promote and sell the counterfeit products through online marketplaces. Additionally, Defendants' counterfeit use has been broad, extensive, blatant, and in furtherance of a coordinated effort to imitate Plaintiff's products. Therefore, the undersigned recommends granting Plaintiff's requested statutory damages of $2,000,000.00 for each mark infringed (one word mark and one design mark) for a total of $4,000,000.00 per defendant in statutory damages.

## V. RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiff against Defendants for trademark infringement, counterfeiting, false designation of origin, and trademark dilution. The undersigned further recommends that an Order be entered awarding Plaintiff $4,000,000.00 per Defendant in statutory damages and permanently enjoining Defendants from infringing Plaintiff's trademark rights. Additionally, the temporary relief granted in this Court's September 18, 2018 Order (ECF No. 46) should be made permanent.

## VI.  **NOTICE**

**By mailing copies of this Report and Recommendation, the Court notifies the parties as follows.  Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to the following email addresses associated with Defendants:

| | |
|---|---|
| jorwhe-18 | bangming_vip |
| jordanww123ww@gmail.com | wangyuanyuan23156@163.com |
| | |
| achieve-30/perfect-2018 | linc2park |
| qingyutian2018@163.com | quizhucute@outlook.com |
| | |
| jhb_bin885 | caixue_jinling |
| wqm0015@hotmail.com | xue_cai18@sohu.com |

/s/
Ivan D. Davis
United States Magistrate Judge

March 20, 2019
Alexandria, Virginia